IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| FREDERICK P. PATTERSON, | ) | 4:09CV3139 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| ROBERT HOUSTON, Director of | ) | |
| Nebraska Corrections, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court on Petitioner Frederick Patterson's ("Patterson") Amended Petition for Writ of Habeas Corpus ("Amended Petition"). (Filing No. 11.) Respondent filed an Answer (filing no. 15), Brief in Support of his Answer (filing no. 16), and State Court Records (filing nos. 13 and 14). Patterson did not respond. (*See* Docket Sheet.) This matter is therefore deemed fully submitted.

On initial review, the court liberally construed Patterson's Amended Petition to allege that he is entitled to a writ of habeas corpus because:

Claim One:    Petitioner was deprived the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments *because* Petitioner's trial counsel (1) did not challenge a juror who admitted to suffering instances of memory loss; (2) did not sever some of the charges against Petitioner; (3) did not challenge the jury instruction regarding the charge of theft by receiving stolen property; (4) did not properly advise Petitioner of his right to testify; (5) did not have Petitioner's restraints removed during trial; (6) did not challenge the voluntariness of Petitioner's post-arrest statements; (7) did not challenge the state's witness who testified to a telephone conversation he had with Petitioner; (8) did not "end the state['s] solicitation of evidence of

fear" from one of the state's witnesses; (9) did not challenge the testimony of a witness who gave prejudicial testimony against Petitioner, yet was unable to identify him; (10) did not challenge a violation of the court's order that witnesses be sequestered; (11) did not challenge evidence of Petitioner's previous incarcerations; (12) did not challenge the trial judge's partiality toward the state's case; (13) did not challenge the state's closing argument; (14) did not advise Petitioner of plea negotiations; and (15) informed the jury that Petitioner was guilty of being a felon in possession of a weapon.

Claim Two:       Petitioner was deprived the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments *because* Petitioner's appellate counsel did not assert the Petitioner's trial counsel was ineffective for (1) failing to challenge a juror who admitted to suffering instances of memory loss; (2) failing to sever some of the charges against Petitioner; (3) failing to challenge the jury instruction regarding the charge of theft by receiving stolen property; (4) failing to properly advise Petitioner of his right to testify; (5) failing to have Petitioner's restraints removed during trial; (6) failing to challenge the voluntariness of Petitioner's post-arrest statements; (7) failing to challenge the state's witness who testified to a telephone conversation he had with Petitioner; (8) failing to "end the state['s] solicitation of evidence of fear" from one of the state's witnesses; (9) failing to challenge the testimony of a witness who gave prejudicial testimony against Petitioner, yet was unable to identify him; (10) failing to challenge a violation of the court's order that witnesses be sequestered; (11) failing to challenge evidence of Petitioner's previous incarcerations; (12) failing to challenge the trial judge's partiality toward the state's case; (13) failing to challenge the state's closing argument; (14) failing to advise Petitioner of plea negotiations; and (15) informing the jury that Petitioner was guilty of being a felon in possession of a weapon.

2

(Filing No. 12 at CM/ECF pp. 1-2; Filing No. 11 at CM/ECF pp. 7, 10.)

## *BACKGROUND*

### I.    Patterson's Conviction and Direct Appeal

On August 9, 2002, Patterson was charged, by amended information, with five felony charges stemming from events that occurred on February 2, 2001.  (Filing No. 13-10, Attach. 10 at CM/ECF p. 40.)  The Nebraska Court of Appeals provided the following description of these events:

> On February 2, 2001, an Omaha police officer went to serve a warrant on Patterson. The officer was directed to the home of Brian Chicoine, where Patterson had apparently been staying. When the officer arrived, Patterson fled on foot, throwing a gun behind a refrigerator as he ran out the back door of the home. Patterson kicked in the door of a house several blocks away and fought Marjorie Kaminski, the woman who lived there, for her car keys. Patterson stole Kaminski's car and drove it to another house where he got a ride from a friend-of-a-friend to find Patterson's ex-girlfriend's, Teresa Rodriguez', car at Metro Community college. However, the car was actually registered in the name of Lupe Rodriguez, Teresa's mother. Patterson was going to take the car from Teresa's school, but she was already driving away when he got there. Patterson directed his driver to follow Teresa, and they followed her to a convenience store. When Teresa went inside the store, Patterson took her car. Patterson used this car to continue fleeing from the police, resulting in a car chase between Patterson and the police. Patterson collided with a car driven by Debra Miller, a bystander, but kept driving. The police continued chasing Patterson and eventually rammed into the back of Patterson's car to get him to stop. Patterson lost control of his car, the car stopped, and then Patterson fled on foot. Patterson climbed onto the fence of a bridge and threatened to jump. After a four-hour standoff on the bridge, Patterson surrendered to the police.

(Filing No. 13-14, Attach. 14 at CM/ECF pp. 2-3.)

3

A jury found Patterson guilty of all five felony counts: criminal mischief, robbery, flight to avoid arrest, felon in possession of a firearm and theft by receiving stolen property. (Filing No. 13-3, Attach. 3 at CM/ECF p. 20; Filing No. 13-14, Attach. 14 at CM/ECF p. 4.) Patterson was thereafter sentenced to a total of 20 to 40 years in prison. (Filing No. 13-14, Attach. 14 at CM/ECF p. 4.)

On October 28, 2002, Patterson appealed his convictions and sentences. (Filing No. 13-1, Attach. 1 at CM/ECF p. 1.) On appeal, Patterson argued that the District Court for Douglas County, Nebraska ("Douglas County District Court") erred in overruling his motion in limine regarding footprint evidence, overruling his objection to the testimony of a witness who had violated the court's sequestration order, allowing the state to amend the information during the court of the trial, overruling his motion to suppress his statements, overruling his motion to dismiss, overruling his motion for new trial, and imposing excessive sentences. (Filing No. 13-6, Attach. 6 at CM/ECF pp. 1-2.) The Nebraska Court of Appeals affirmed Patterson's conviction and sentences in an unpublished opinion on May 25, 2004. (*Id*.) Patterson then filed a petition for further review with the Nebraska Supreme Court, which was overruled on July 14, 2004. (Filing No. 13-7, Attach. 7; Filing No. 13-8, Attach. 8 at CM/ECF p. 1.)

## II.   Patterson's Post-Conviction Motion and Appeal

On June 29, 2005, Patterson filed a "Verified Motion for Postconviction Relief," and later amended this Motion on February 26, 2007, by filing an "Amended Motion for Post-Conviction Relief" ("Post-Conviction Motion"). (Filing No. 13-10, Attach. 10 at CM/ECF pp. 40, 72.) The Douglas County District Court denied Patterson's Post-Conviction Motion on June 10, 2008, and Patterson filed a timely appeal. (*Id*. at CM/ECF p. 1, 102.)

4

On March 31, 2009, the Nebraska Court of Appeals reviewed the Douglas County District Court's denial of Patterson's Post-Conviction Motion and determined that one of Patterson's claims had merit. (Filing No. 13-14, Attach. 14 at CM/ECF p. 46.) Specifically, the Nebraska Court of Appeals concluded that Patterson's "appellate counsel performed deficiently with respect to closing argument in that trial counsel, without any reasonable tactical justification, admitted to the jury that the gun retrieved from behind the refrigerator was Patterson's." (*Id.*) As a result, the Nebraska Court of Appeals remanded the matter to the Douglas County District Court with instructions to reverse Patterson's conviction for being a felon in possession of a firearm. (*Id.*) The Nebraska Court of Appeals affirmed the Douglas County District Court's decision in all other respects. (*Id.*)

After remand, Patterson filed a petition for further review in the Nebraska Supreme Court. (Filing No. 13-15, Attach. 15.) On June 17, 2009, the Nebraska Supreme Court denied Patterson's petition for further review. (Filing No. 13-16, Attach. 16 at CM/ECF p. 1.) The mandate was issued on July 1, 2009. (Filing No. 13-9, Attach. 9 at CM/ECF p. 2.)

On July 6, 2009, Patterson filed a Petition for Writ of Habeas Corpus in this court. (Filing No. 1.) However, because Patterson failed to use Form AO 241, and because his Petition did not clearly indicate the grounds alleged, the court asked Patterson to file an amended petition. (Filing No. 10.) Patterson filed his Amended Petition on September 21, 2009. (Filing No. 11.) Thereafter, Respondent filed his Answer (filing no. 15) and a Brief in Support (filing no. 16). In his Brief, Respondent argues that Patterson's claims are either procedurally defaulted, moot, or that the state court reasonably applied federal law, and therefore, no federal habeas corpus relief is available. (Filing No. 9 at CM/ECF pp. 12-26.) Patterson did not respond. (*See* Docket Sheet.)

*ANALYSIS*

## I.   Procedural Default

### A.   Standards for Exhaustion/Procedural Default

As set forth in 28 U.S.C. § 2254(b)(1):

(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

    (A)   the applicant has exhausted the remedies available in the courts of the State; or

    (B)   (I)   there is an absence of available State corrective process; or

        (ii)   circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1)

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  A state prisoner must therefore "fairly present" the substance of each federal constitutional claim to the state courts

*before* seeking federal habeas relief.  *Id.* at 844.  In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been  presented in an appeal to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner.  *See Akins v. Kenney*, 410 F.3d 451, 454-55 (8th Cir. 2005).

In addition, "fair presentation" of a habeas claim in state court means that a petitioner "must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts."  *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) (quotation omitted).  Thus, where a petitioner argued in the state courts only that "the trial court misapplied . . . state statutes and case law," the claim is procedurally defaulted.  *Id.*; *see also Rucker v. Norris*, 563 F.3d 766, 771 (8th Cir. 2009) (finding claim was procedurally barred where the petitioner failed to raise his federal due process claim and "cited no federal authority" in the state courts).

Moreover, where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'"  *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)).  Stated another way, if a claim has not been presented to the Nebraska appellate courts and is now barred from presentation, the claim is procedurally defaulted, not unexhausted. *Akins*, 410 F.3d at 456 n.1.

Under Nebraska law, "[a]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior

motion." *State v. Ortiz*, 670 N.W.2d 788, 792 (Neb. 2003). Additionally, "[a] motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." *Hall v. State*, 646 N.W.2d 572, 579 (Neb. 2002). In such circumstances, where a Nebraska state court rejects a claim on state procedural grounds, and "issues a plain statement that it is rejecting petitioner's federal claim on state procedural grounds," a federal habeas court is precluded from "reaching the merits of the claim." *Shaddy v. Clarke*, 890 F.2d 1016, 1018 (8th Cir. 1989); *see also Greer v. Minn.*, 493 F.3d 952, 957 (8th Cir. 2007) (reiterating that "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement," federal habeas is barred because "[i]n such instances, the state prisoner forfeits his right to present his federal claim through a federal habeas corpus petition") (quotations omitted). However, the state court procedural decision must "rest[] on independent and adequate state procedural grounds." *Barnett v. Roper*, 541 F.3d 804, 808 (8th Cir. 2008) (quotation omitted). "A state procedural rule is adequate only if it is a firmly established and regularly followed state practice." *Id.* (quotation omitted). Even where a claim has been procedurally defaulted, a petitioner is entitled to an opportunity to demonstrate cause and prejudice to excuse the default. *Akins*, 410 F.3d at 456 n.1.

### B.   *Claim One, Parts Five, Nine and Fourteen*

In Claim One-Part Five, Patterson alleges he was denied effective assistance of trial counsel because his trial counsel did not remove his restraints during trial. (Filing No. 12 at CM/ECF p. 1.) In Claim One-Part Nine, Patterson alleges he was denied effective assistance of trial counsel because his trial counsel did not advise him about plea negotiations. (*Id.*) In Claim One-Part Fourteen, Patterson alleges he was denied effective assistance of trial counsel because his trial counsel did not challenge the prejudicial testimony of a witness who was unable to identify him. (*Id.*)

Although Patterson raised Claim One, Parts Five, Nine and Fourteen in his Post-Conviction Motion, he failed to raise them in his post-conviction appeal or in

his post-conviction petition for further review.  (Filing No. 13-10, Attach. 10 at CM/ECF pp. 82-86, 91-91, 100; Filing No. 13-11, Attach. 11 at CM/ECF pp. 9-12; Filing No. 13-15, Attach. 15 at CM/ECF pp. 1-2.)  Accordingly, Patterson failed to fairly present Claim One, Parts Five, Nine and Fourteen to the Nebraska courts in "one complete round" of Nebraska's appellate review process.  *See Akins*, 410 F.3d at 454-55.  Moreover, under Nebraska law "[a]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion." *Ortiz*, 670 N.W.2d at 792.  Because Patterson raised Claim One, Parts Five, Nine and Fourteen in his Post-Conviction Motion, but failed to "fairly present" them to the Nebraska courts in "one complete round," they are procedurally defaulted.

C.    *Claim One-Part Seven*

In Claim One-Part Seven, Patterson alleges he was denied effective assistance of trial counsel because his trial counsel did not challenge the state's witness who testified about a telephone conversation he had with Petitioner.  (Filing No. 12 at CM/ECF p. 1.)  Although Patterson raised Claim One-Part Seven in his Post-Conviction Motion and in his post-conviction appeal, he failed to raise it in his post-conviction petition for further review.  (Filing No. 13-10, Attach. 10 at CM/ECF pp. 88-90; Filing No. 13-11, Attach. 11 at CM/ECF pp. 9-12, 31-34; Filing No. 13-15, Attach. 15 at CM/ECF pp. 1-2.)  Due to this failure, Patterson failed to fairly present Claim One-Part Seven to the Nebraska courts in "one complete round" of Nebraska's appellate review process.  *See Akins*, 410 F.3d at 454-55.  Moreover, under Nebraska law "[a]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion." *Ortiz*, 670 N.W.2d at 792. Because Patterson raised Claim One-Part Seven in his Post-Conviction Motion, but failed to fairly present it to the Nebraska courts in "one complete round," Claim One-Part Seven  is also procedurally defaulted.

D.     *Claim One-Part Ten*

In Claim One-Part Ten, Patterson alleges he was denied effective assistance of trial counsel because his trial counsel did not challenge a violation of the court's order that witnesses be sequestered. (Filing No. 12 at CM/ECF p. 2.) Patterson never presented this claim to the Nebraska courts.  (Filing Nos. Filing No. 13-10, Attach. 10; Filing No. 13-11, Attach. 11; Filing No. 13-15, Attach. 15.)  In fact, in his direct appeal brief, Patterson acknowledges that his trial counsel did object when the trial court's order to sequester witnesses was violated.  (Filing No. 13-3, Attach. 3 at CM/ECF p. 25.)  Because Patterson failed to present Claim One-Part Ten to the Nebraska courts and because the Nebraska courts will not entertain a successive motion for postconviction relief where the relief was clearly available at the time Patterson filed his first Post-Conviction Motion, Claim One-Part Ten is procedurally defaulted.[1]  *See Ortiz*, 670 N.W.2d at 792.

E.     *Claim Two, Parts Five, Seven, Nine, Ten and Fourteen*

In Claim Two, Parts Five, Seven, Nine, Ten and Fourteen, Patterson alleges ineffective assistance of appellate counsel claims that correspond to the claims discussed above (*compare* Claim One *with* Claim Two).  (Filing No. 11 at CM/ECF pp. 7, 10.)  In other words, Patterson alleges he was denied effective assistance of appellate counsel because his appellate counsel did not assert Claim One, Parts Five,

---

[1]The Nebraska Court of Appeals addressed whether Patterson was prejudiced by a violation of the trial court's sequestration order on direct appeal. (Filing No. 13-6, Attach. 6 at CM/ECF pp. 2-3; *see also* Claim Two-Part Ten.)   To the extent that Patterson alleges that his appellate counsel was ineffective for failing to challenge the violation of the trial court's sequestration order, his claim lacks merit.  Contrary to Patterson's Claim Two-Part Ten, the record reflects that his direct appeal counsel did, in fact, challenge the Douglas County District Court's ruling on this issue.  (*Id.* at CM/ECF pp. 2-3.)

Seven, Nine, Ten and Fourteen on direct appeal.   (*Id*.; Filing No. 12 at CM/ECF p. 2.)  However, like the claims above, Patterson's Claim Two, Parts Five, Seven, Nine, Ten and Fourteen are procedurally defaulted because Patterson failed to fairly present them to the Nebraska courts and the Nebraska courts will not entertain a successive motion for postconviction relief where the relief was clearly available at the time Patterson filed his first Post-Conviction Motion.  *See Ortiz*, 670 N.W.2d at 792.

In sum, Claim One, Parts One, Five, Seven, Nine, Ten and Fourteen and Claim Two, Parts Five, Seven, Nine, Ten and Fourteen are procedurally defaulted and this court is precluded from reviewing them absent a showing of cause and prejudice or actual innocence.  *Clemons v. Luebbers*, 381 F.3d 744, 751 (8th Cir. 2004).

### F.    Cause and Prejudice

To excuse a procedural default, a petitioner must demonstrate either cause for the default and actual prejudice as a result of the alleged violation of federal law, or, in rare cases, that failure to consider the claim will result in a fundamental miscarriage of justice.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Although there is no precise definition of what constitutes cause and prejudice, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Strickler v. Greene*, 527 U.S. 263, 283 n.24 (1999); *see also Bell v. Attorney Gen. of Iowa*, 474 F.3d 558, 561 (8th Cir. 2007) ("A cause is sufficient to excuse procedural default when it is external to the petitioner, and not attributable to the petitioner.").

Patterson does not argue that he, or his counsel, were impeded from complying with Nebraska's procedural rules or that he is actually innocent.  Thus, Patterson has neither established cause for the procedural default of his claims, nor demonstrated that the court's failure to consider his claims will result in a fundamental miscarriage of justice.  Accordingly, Claim One, Parts Five, Seven, Nine, Ten, and Fourteen and Claim Two, Parts Five, Seven, Nine and Fourteen are dismissed.

## II.    Claim One-Part Fifteen and Claim Two-Part Fifteen

In Claim One-Part Fifteen, Patterson alleges he was denied effective assistance of trial counsel because his trial counsel informed the jury that he was guilty of being a felon in possession of a weapon.  (Filing No. 12 at CM/ECF p. 2.)  In Claim Two-Part Fifteen, Patterson alleges he was denied effective assistance of appellate counsel because his appellate counsel did not assert Claim One-Part Fifteen on direct appeal. (Filing No. 11 at CM/ECF p. 2.)  As discussed above, Patterson already received state court relief on these claims and is no longer being held pursuant to a felon in possession of a firearm conviction.  (Filing No. 13-14, Attach. 14 at CM/ECF p. 18.) Accordingly, Claim One-Part Fifteen and Claim Two-Part Fifteen are moot.

## III.    Remaining Claims

### A.    Standard of Review

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the facts and the law.  *See* 28 U.S.C. § 2254(d).  With regard to the deference owed to factual findings of a state court's decision, a federal court is bound by those findings unless the state court made a "decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

Further, section 2254(d)(1) states that a federal court may not grant a writ of habeas corpus unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary

to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Id.* at 399. Importantly, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006). This high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460-61 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

### B.   *The* Strickland *Standard*

In addition to the general standard of review set forth above, a claim of ineffective assistance of counsel is reviewed under the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668, 694 (1984). *Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id.* at 687; *see also Bryson v. United States*, 268 F.3d 560 (8th Cir. 2001); *Williamson v. Jones*, 936 F.2d 1000, 1004 (8th Cir. 1991).

The first prong of the *Strickland* test requires the petitioner to demonstrate that his attorney failed to provide reasonably effective assistance. *Strickland*, 466 U.S. at 687-88. In conducting such a review the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The second prong requires the petitioner to demonstrate "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Hubbeling v. United States*, 288 F.3d 363, 365 (8th Cir. 2002). A court need not address the reasonableness of the attorney's skills and diligence if the movant cannot prove prejudice under the second

prong of this test.  *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) (quoting *Cheek v. United States*, 858 F.2d 1330, 1336 (8th  Cir. 1988)).  Further, as set forth in *Strickland*, counsel's "strategic choices made after thorough investigation are virtually unchallengeable" in a later habeas corpus action.  466 U.S. at 689.

Additionally, the Supreme Court recently emphasized that the deference due the state courts applies with vigor to decisions involving ineffective assistance of counsel claims.  *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1418-20 (2009) (reversing the Ninth Circuit Court of Appeals and holding that the decision of the California Court of Appeals, that the defendant was not deprived of effective assistance of counsel when his attorney recommended withdrawing his insanity defense during second phase of trial, was not contrary to or an unreasonable application of clearly established federal law; also concluding, among other things, that there was no reasonable probability that, but for counsel's alleged unprofessional error, the result of the proceeding would have been different).

In *Knowles*, the Justices stressed that under the *Strickland* standard, the state courts have a great deal of "latitude" and that "leeway" presents a "substantially higher threshold" for a federal habeas petitioner to overcome.  Thus:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro, supra,* at 473, 127 S. Ct. 1933.  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

*Knowles,* 129 S. Ct. at 1420.

C.    *State Court Findings–Claim One-Part One*

In Claim One-Part One, Patterson alleges he was denied effective assistance of trial counsel because his trial counsel did not challenge a juror who admitted to suffering instances of memory loss. (Filing No. 12 at CM/ECF p. 1.)  The Nebraska Court of Appeals addressed this claim on the merits and found that nothing in the record indicated that the juror in question was unfit to be on the jury. (Filing No. 13-14, Attach. 14 at CM/ECF pp. 19-21.)  The Nebraska Court of Appeals noted that the eight bases for challenging jurors for cause under Neb. Rev. Stat. § 29-2006 did not apply, and that Patterson's claim lacked merit.  (*Id*. at CM/ECF p. 22.)

D.    *State Court Findings–Claim One-Part Two*

In Claim One-Part Two Patterson alleges he was denied effective assistance of trial counsel because his trial counsel did not sever some of the charges against him. (Filing No. 12 at CM/ECF p. 1.)  The Nebraska Court of Appeals addressed this claim with a two-stage analysis: first, whether the charges were properly joinable and second, whether Patterson was prejudiced by a joint trial of the charges.  (Filing No. 13-14, Attach. 14 at CM/ECF pp. 9-10.)  Under this analysis, the Court of Appeals concluded that all of the charges against Patterson were "part of the same 'act or plan' and properly joinable under [Neb. Rev. Stat.] § 29-2002(1)."  (*Id*.)  In addition, the Court of Appeals concluded that Patterson failed to make the necessary showing of prejudice to establish that his trial counsel was ineffective for failing to move to sever any of the charges against him.  (*Id*. at CM/ECF pp. 10-15.)

E.    *State Court Findings–Claim One-Part Three*

In Claim One-Part Three, Patterson alleges he was denied effective assistance of trial counsel because his trial counsel did not challenge the jury instruction regarding the charge of theft by receiving stolen property. (Filing No. 12 at CM/ECF p. 1.)  The Nebraska Court of Appeals addressed this claim on the merits and concluded that trial counsel was not ineffective for failing to object to the jury

instructions because the jury "instructions, read as a whole, were proper and correct." (Filing No. 13-14, Attach. 14 at CM/ECF pp. 44-45.)

### F.      State Court Findings–Claim One-Part Four

In Claim One-Part Four, Patterson alleges he was denied effective assistance of trial counsel because his trial counsel did not properly advise him of his right to testify.  (Filing No. 12 at CM/ECF p. 1.)  The Nebraska Court of Appeals addressed this claim on the merits and concluded that Patterson's trial counsel was not ineffective because the record showed that Patterson was informed of his right to testify and acquiesced to counsel's advice not to testify.  (Filing No. 13-14, Attach. 14 at CM/ECF pp. 32-33.)

### G.      State Court Findings–Claim One-Part Six

In Claim One-Part Six, Patterson alleges he was denied effective assistance of trial counsel because his trial counsel did not challenge the voluntariness of statements that he made during his arrest.  (Filing No. 11 at CM/ECF p. 7; Filing No. 12 at CM/ECF p. 1.)  Patterson alleges that he was mentally unstable during his arrest and that the statements that he made to the police should have been suppressed. (Filing No. 11 at CM/ECF p. 7.)

The Nebraska Court of Appeals specifically analyzed whether Patterson's statements to the "police were involuntary, and thus inadmissible, because of his physical condition (including prolonged exposure to severely cold temperatures and injuries), his mental state (including suicidal ideations), and the coercive conduct of the police."  (Filing No. 13-14, Attach. 14 at CM/ECF p. 14.)  The Nebraska Court of Appeals found that:

> At the time of the statements, police were not actively questioning Patterson, they were trying to talk him out of jumping off of a bridge. Officer Kevin Barbour, the police negotiator, testified that the goal of

16

negotiation is to buy time to allow an irrational individual to calm down and rethink the situation. Any discussion the police had with Patterson on the bridge was to establish a rapport with him, gain his trust, and ultimately save his life. Certainly, any statements made by Patterson while on the bridge were voluntary and admissible because they were not the result of a police interrogation.

After surrendering to the police, Patterson was placed in a patrol car and taken to the hospital. According to Officer Barbour, Patterson asked if he was going to jail. Officer Barbour told Patterson that he would try to get him admitted to a mental hospital, and Patterson responded that he would not be able to be admitted to a mental hospital because he had somebody else's gun and that there was a warrant for his arrest. These statements by Patterson were clearly voluntary and not a result of police initiated questioning, therefore, such statements were admissible.

(*Id*. at CM/ECF pp. 30-31.)   After this analysis, the Nebraska Court of Appeals concluded that trial counsel's performance on this issue was not deficient.  (*Id*. at CM/ECF p. 32.)

### H.     State Court Findings–Claim One-Part Eight

In Claim One-Part Eight, Patterson alleges he was denied effective assistance of trial counsel because his trial counsel did not "end the state['s] solicitation of evidence of fear" from Teresa Rodriguez, one of the state's witnesses. (Filing No. 12 at CM/ECF p. 1.)  Specifically, Patterson argues that his trial counsel was ineffective because she failed to object to Teresa's testimony that, while she was in the convenience store, she was afraid and asked the store clerk to call the police.  (Filing No. 13-10, Attach. 10 at CM/ECF pp. 90-91.)   The Nebraska Court of Appeals addressed this claim and concluded that trial counsel's performance was not deficient because "Teresa's statements to the clerk were admissible as excited utterances, and thus an objection thereto by trial counsel would have been meritless." (Filing No. 13-14, Attach. 14 at CM/ECF p. 26.)

17

I.      *State Court Findings–Claim One-Part Eleven*

In Claim One-Part Eleven, Patterson alleges he was denied effective assistance of trial counsel because his trial counsel did not challenge evidence of his previous incarcerations.  (Filing No. 12 at CM/ECF p. 2.)  Respondent argues that Patterson never fairly presented this claim to the Nebraska courts.  (Filing No. 16 at CM/ECF p. 21.)  This court disagrees.

Patterson arguably presented Claim One-Part Eleven to the Nebraska Courts in his Post-Conviction Motion, post-conviction appeal and petition for further review.  (Filing No. 13-10, Attach. 10 at CM/ECF pp. 93-94; Filing No. 13-11, Attach. 11 at CM/ECF pp. 4, 41-42; Filing No. 13-15, Attach. 15 at CM/ECF pp. 1, 7.)  In his state court post-conviction proceedings, Patterson specifically argued that his trial counsel was ineffective for not objecting to Officer Barbour's trial testimony about Patterson's statement that he "was tired of going to jail" and that he knew that there were warrants out for his arrest.  (Filing No. 13-14, Attach. 14 at CM/ECF p. 27.)  In addressing this claim, the Nebraska Court of Appeals concluded that trial counsel's performance was not deficient because the statements presented at trial were admissible and "[a]ny objection from trial counsel . . . would not have been sustained."  (*Id*. at CM/ECF p. 28.)

J.      *State Court Findings–Claim One-Part Twelve*

In Claim One-Part Twelve Patterson alleges he was denied effective assistance of trial counsel because his trial counsel did not challenge the trial judge's partiality toward the state's case.  (Filing No. 12 at CM/ECF p. 2.)  This claim arose when the state filed an amended information against Patterson to change the name of the registered owner of the car Patterson took from the gas station from Teresa Roriguez to Lupe Rodriguez.  (*Id*. at CM/ECF pp. 33-39.)  This amendment occurred after the trial judge suggested that only Lupe Rodriguez could be deemed the owner, as she was the registered owner of the vehicle.  (*Id*.)  Patterson alleges that the trial judge

18

was partial to the state because the judge helped the state with reference to the amendment.  (Filing No. 13-14, Attach. 14 at CM/ECF p. 33.)

The Nebraska Court of Appeals addressed this claim on the merits and concluded that:

> [A]lthough the trial judge may not have maintained ideal impartiality on the motion to amend, the amendment was not prejudicial to Patterson because the amendment and the "help" from the trial court made no difference. And under the overwhelming evidence on this charge, a different outcome would not have resulted had Teresa been named as owner in the information and jury instructions.

(*Id.* at CM/ECF p. 39.)  Accordingly, the Nebraska Court of Appeals determined that trial counsel's performance was not deficient for failing to challenge the trial judge's impartiality.  (*Id.*)

### K.    State Court Findings–Claim One-Part Thirteen

In Claim One-Part Thirteen Patterson alleges he was denied effective assistance of trial counsel because his trial counsel did not challenge the state's closing argument.  (Filing No. 12 at CM/ECF p. 2.)  In addressing this claim, the Nebraska Court of Appeals analyzed whether state's closing argument was prejudicial and concluded that the statements made by the prosecutor were based on evidence introduced at trial and that Patterson's trial counsel was not ineffective for failing to object to those statements.  (Filing No. 13-14, Attach. 14 at CM/ECF p. 40.)

### L.    State Court Findings–Claim Two, Parts One, Two, Three, Four, Six, Eight, Eleven, Twelve and Thirteen

In Claim Two, Parts One, Two, Three, Four, Six, Eight, Eleven, Twelve and Thirteen, Patterson alleges ineffective assistance of appellate counsel claims that

19

correspond to the claims discussed above (*compare* Claim One *with* Claim Two). (Filing No. 11 at CM/ECF pp. 7, 10.)  In other words, Patterson alleges he was denied effective assistance of appellate counsel because his appellate counsel did not assert Claim One, Parts One, Two, Three, Four, Six, Eight, Ten, Eleven, Twelve and Thirteen on direct appeal.  (*Id*.; Filing No. 12 at CM/ECF p. 2.)  Like Patterson's ineffective assistance of trial counsel claims, the Nebraska Court of Appeals addressed Claim Two, Parts One, Two, Three, Four, Six, Eight, Eleven, Twelve and Thirteen and dismissed them on the merits because Patterson's appellate counsel was not ineffective.  (Filing No. 13-14, Attach. 14 at CM/ECF pp. 9-15, 19-21, 26-28, 32-33, 39, 40, 44-45.)

### M.   Deference

As set forth above, this court must give Nebraska state court decisions substantial deference.  After carefully reviewing the record in this matter, the court finds that the Nebraska Court of Appeals' decision to deny Patterson's ineffective assistance of trial and appellate counsel claims was not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  Moreover, Patterson has not submitted clear and convincing evidence to establish that the Nebraska Court of Appeals was incorrect in any of its factual or legal determinations.  28 U.S.C. § 2254(e)(1).  Because the Nebraska state courts reasonably applied *Strickland* and other Supreme Court holdings in reaching their decisions, Patterson is not entitled to a writ of habeas corpus.

IT IS THEREFORE ORDERED that:

1.   Patterson's Amended Petition for Writ of Habeas Corpus (filing no. 11) is denied in all respects and this action is dismissed with prejudice.

2.      A separate judgment will be entered in accordance with this Memorandum and Order.

DATED this 11th day of May, 2010.

BY THE COURT:


s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

21